

**DEFENSE CONTRACT MANAGEMENT AGENCY**
6350 WALKER LANE, SUITE 300
ALEXANDRIA, VA 22310-3241

IN REPLY
REFER TO  OC

May 31, 2005

MEMORANDUM FOR RECORD

SUBJECT: Freedom of Information Act Appeal – Alan M. Cohn, DE03-048

    I am the Director of Contract Operations for the Defense Contract Management Agency (DCMA). Part of my duties involve oversight of the agency quality assurance mission. A related function is the oversight of the DCMA Corrective Action Request (CAR) Program.

    I am familiar with the Freedom of Information Act (FOIA) request of Mr. Alan M. Cohn and with the basis for the Defense Contract Management Agency East (DCMAE) denial of the request. Essentially, DCMAE denied the FOIA request pursuant to 5 U.S.C. 552(b)(4) on the basis that a release of the documents, Corrective Action Requests (CARs) and the Sikorsky Aircraft Company (Sikorsky) responses to those CARs, would significantly impair the Government's ability to obtain the same quality and quantity of information from Sikorsky in the future.

    In addition, DCMAE considered a Sikorsky claim of competitive harm and rejected that claim. After a review of the record, a representative sampling of the CARs and Sikorsky responses, and the February 11, 2005, Miller & Chevalier letter, I agree with the DCMAE findings in regard to Sikorsky's competitive harm argument. It is my opinion that release of the CARs, though possibly embarrassing to Sikorsky, will not cause such competitive harm as to require their withholding from Mr. Cohn.

    With regard to the DCMAE determination that release of the CARs would significantly impair the Government's ability to obtain information from Sikorsky in the future if the CARs were released to Mr. Cohn or another member of the public, the Director, DCMAE, and I have reviewed the specifics of this case. Even assuming that the CARs qualified for a FOIA exemption, and it is our consensus that CARs do not so qualify, it is our view that a release of the CARs in this matter would not significantly impair the government's ability to obtain the same information in the future from Sikorsky or another government contractor.

    The CARs at issue were prepared by Government personnel in the performance of their duties. The information contained in the CARs was not obtained from Sikorsky except to the extent that Sikorsky must permit DCMA personnel access to the Sikorsky plant in order to carry out quality assurance functions in accordance with the Federal Acquisition Regulation (FAR) inspection of supplies clause at FAR 52.246-2(c), which provides, in part:

2

> The Government has the right to inspect and test all supplies called for by the contract, to the extent practicable, at all places and times, including the period of manufacture, and in any event before acceptance.

Clearly, the Government has the right to inspect the supplies, in this case helicopters, being manufactured at Sikorsky's plants. Because of this contractual requirement, Sikorsky may not prevent DCMA quality assurance personnel from performing their inspection and testing duties. Accordingly, the government will not be significantly impaired in its ability to obtain this information in the future, even if the CARs in this matter are released.

Once in the Sikorsky plant, DCMA quality assurance personnel may make a record of the inspection, to include seeking correction of nonconforming supplies. That is accomplished by DCMA through the use of CARs. The process for CARs is detailed in the DCMA One Book Business Processes Guidebook for Supplier Risk Management. CARs are government documents and ordinarily releasable in response to a FOIA request. There doesn't seem to be any reason for withholding from Mr. Cohn the CARs prepared by DCMA in this matter, except to the extent that proprietary or trade secret information is in the documents. It is my understanding that any proprietary or trade secret information will be redacted. Once that is done, the requested CARs should be released.

As to the Sikorsky responses to DCMA CARs, I believe DCMAE was incorrect in determining written responses to CARS are mandatory. DCMAE based their determination on the contract provision at FAR 52.246-2, which states at FAR 52.246-2(g):

> The Contractor shall remove supplies, rejected or required to be corrected. However, the Contracting Officer may require or permit correction in place, promptly after notice, by and at the expense of the Contractor. The Contractor shall not tender for acceptance corrected or rejected supplies without disclosing the former rejection or requirement for correction, and, when required, shall disclose the corrective action taken.

This FAR contract clause contemplates a notice to the contractor of a deficiency, which is accomplished by DCMA with CARs, and a corrective action by the contractor. This FAR provision does not specifically require the contractor to provide any written response to a CAR, but, rather, requires the contractor to disclose the corrective action taken. That may be accomplished by orally informing the government of the corrective action, by permitting the government to inspect the record of corrective action, or by voluntarily providing a written response to the government of the action taken.

3

In this case, Sikorsky, as has been their usual practice in the past, has responded to CARs in writing and has provided that response to DCMA. In fact, many of the CARs are written on a Sikorsky form, Sikorsky Form 118-7, by government inspectors, with the Sikorsky response written on the same form. Nonetheless, there is no contractual requirement for Sikorsky to do so, and the Sikorsky written responses are entirely voluntary.

It is my opinion that the CARs themselves should be released to Mr. Cohn, after being redacted to remove proprietary information or trade secrets, and any other exempt information.. On the other hand, I am advised that, if the responses to CARs are voluntary, a different legal standard is to be applied in determining a release pursuant to FOIA. It is my understanding that the legal standard for the withholding of voluntarily submitted information is to withhold the information if the submitter would not customarily release such information to the public. As it is my opinion that the Sikorsky responses to the CARs in this particular case are voluntary, the legal standard to be applied should be the one applicable to voluntarily submitted documents, and I am advised that Sikorsky asserts that the information in their response to DCMA CARs would not ordinarily be released to the public. Accordingly, I am of the opinion that the Sikorsky responses to DCMA CARs should not be released.

Robert W. Schmitt
Executive Director
Contract Management Operations