IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED TECHNOLOGIES CORPORATION, PRATT & WHITNEY DIVISION<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE, et al.<br><br>Defendants. | Civil Action Number: 05-2271 (RWR) |

**DEFENDANT'S COUNTER-STATEMENT OF FACTS**

In accordance with Local Civil Rule 56.1 of the United States District Court for the District of Columbia, Defendant hereby respectfully submits its counter-statement of facts in response to Plaintiff's statement of material facts which are not in genuine dispute.

1. On December 15, 2004, a reporter for the Hartford Courant newspaper in Hartford, Connecticut submitted a Freedom of Information Action ("FOIA") request to DCMAEast ("DCMA") in which it requested a copy of the report of a quality system audit conducted by DCMA of P&W's Engine Center on November 8-10, 2004, a Level III Corrective Action Request ("CAR") that DCMA issued to P&W based upon the Engine Center audit, and other documents related to that audit. AR 02.

Response: Agreed

2. On January 28, 2005, DCMA counsel advised P&W of FOIA request and that it had identified the following documents as responsive to that request: (1) the Engine Center audit

report, including the reports from the Weld Wire and Manufacturing Fixture Control audits which were appended to it; (2) photographs taken by DCMA auditors during the Engine Center audit; (3) the Briefing; (4) the CAR; (5) P&W's response to the Level III CAR; and (6) various e-mails relating to the Engine Center Audit report, the Level III CAR, and P&W's response to it. AR 03-04, 63.

Response: Agreed

3. DCMA's January 28, 2005 letter requested that P&W address the following four factors pertaining to competitive harm in its response to the FOIA request: (1) "the general custom or usage in your business regarding this type of information;" (2) the number of persons who have, or have had, access to the information; (3) the type and degrees of commercial injury that disclosure of the information would cause; and (4) "the length of time you feel confidential treatment is warranted." AR 03-04, 11.

Response: Agreed that the letter contains the quoted section, DCMA's letter is part of the administrative record and speaks for itself.  AR 3-4.

4. P&W responded by letter on March 24, 2005, asserting that the information that DCMA identified as responsive to the FOIA request was exempt from disclosure under FOIA Exemption 4. AR 5 - 116. Relying upon Critical Mass Energy Project v. NRC, 875 F.2d 871 (D.C. Cir. 1992), P&W asserted that the information was confidential because it was voluntarily provided and not the kind of information that P&W would customarily make available to public. P&W also asserted that Exemption 4 applied based upon National Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974) for two independent reasons: disclosure of the information would likely "impair the government's ability to obtain necessary information in the

future and would cause "substantial harm to P&W's competitive position." AR 5-26. P&W submitted six affidavits in support of its response.

Response: Agree that Plaintiff made the assertions listed.

5. In response to the competitive harm first factor identified by DCMA in its January 28, 2005 letter, P&W's affidavits stated that it is industry-wide practice to treat such information as confidential and to withhold it from third parties, and that DCMA similarly treats that information as confidential. AR 12, 17, 23. In response to the second factor, P&W's affidavits stated that it limits internal distribution of such information on a "need to know" basis. AR 12, 17, 23.

Response: Agree that Plaintiff made the assertions listed.

6. P&W addressed the third factor at greater length. AR 12-14, 17-19. Its affidavits described the fierce competition in the domestic and international markets for military and commercial aircraft engines and identified the harm to P&W's competitive position in those markets that would result if the DCMA were to release the information in the Engine Center audit report, the CAR, and the other documents responsive to the FOIA request. AR 34-35, 38, 44-47, and 49-52. Specifically, P&W's affidavits stated that P&W's competitors would use the released information in their proposals and other communications with potential customers to make their proposals more attractive and thereby underbid P&W. AR 45-47 and 50-51.

Response: Agree that Plaintiff made the assertions listed.

7. In response to the fourth factor identified by DCMA, P&W's affidavits stated that confidential treatment would be required for at least 10 years. AR 15, 18, 24.

Response: Agree that Plaintiff made the assertions listed.

8. Citing National Parks, P&W asserted that release of the information would impair DCMA's ability to obtain similar information from P&W and other DoD contractors in the future. AR 8-9, 16, 19, 21, 24. P&W noted its cooperative and open relationship with DCMA, and set forth the steps that it would take to lessen its cooperation with DCMA with respect to unscheduled audits given the possibility that the information from those audits would be publicly released. AR 8-9, 16, 19, 21. Those steps included: (1) challenging DCMA's authority to conduct such audits; (2) ensuring that such audits are conducted in a manner that does not interfere with ongoing operations; (3) monitoring all discussions between DCMA and P&W floor employees; (4) insisting that auditors' questions be reduced to writing; and (5) providing that all responses thereto be reviewed by P&W's management and counsel before submission to DCMA. P&W therefore argued that release of the information would adversely impact the effectiveness of DCMA's quality control program. AR 8-9, 16, 19, 21.

Response: Agree that Plaintiff made the assertions listed.

9. P&W submitted a letter from DCMA to another DOD contractor (and P&W affiliate), Sikorsky Aircraft Company, in which DCMA had determined "based upon discussions with DCMA quality assurance professionals" that disclosure of the information in CARs issued to Sikorsky "will significantly impair [DCMA's] ability to obtain the same detail and quality of information from [the contractor] and other DOD contractors in the future and will have an adverse impact on the efficiency and effectiveness of the DCMA Quality Assurance Program." AR 41. P&W asserted that DCMA's reasoning with respect to Sikorsky's CARs applied equally to the quality information obtained from P&W. AR 09-10.

Response: Agree that Plaintiff submitted the letter and made the assertions listed.

4

10. Finally, P&W asserted that no statute, regulation, or contract required it to (1) submit to the unscheduled Engine Center, Weld Wire, or Manufacturing Fixture Control audits, (2) permit DCMA auditors to bring cameras into its Engine Center and take photographs during the Engine Center Audit, or (3) respond to the Level III CAR issued by DCMA as a result of the Engine Center Audit. AR 7-8, 15-16, 20, 24. P&W relied in part upon its Quality Assurance System procedures, which provide for advance notification of all impending quality system audits. P&W therefore argued that it had voluntarily provided all information resulting from those audits. AR 7-8, 15-16, 20, 24. P&W further asserted that it did not customarily make such information available to the public. Id.

Response: Agree that Plaintiff made the assertions listed.

11. DCMA issued a two-page decision on October 12, 2005, expressing its intent to release all of the information at issue except for the photographs, P&W's responses to the Level III CAR, and any information that described P&W's quality control or manufacturing processes in detail. AR 117-18. DCMA decided to withhold the photographs and P&W's responses to the Level III CAR under Critical Mass; noting that it had voluntarily obtained that information because P&W had permitted DCMA auditors to take photographs during the audit and had submitted a written response to the Level III CAR, even though it was not required to do so. AR 117-18. Although DCMA decided to withhold the photographs, it decided to disclose their captions. DCMA also decided to redact information descriptive of P&W's quality control and manufacturing procedures on grounds that it would result in harm to P&W's competitive position. AR 117-18. DCMA determined that the release of the remaining documents "would not likely result in substantial competitive harm to P&W." AR 117.

Response: Agreed.

12. P&W submitted a letter to DCMA on November 14, 2004, seeking reconsideration of the October 12, 2005 decision. AR 230-246.

Response: Agreed.

13. DCMA issued a decision on November 21, 2005, which reaffirmed its previous determination to release the information that it proposed to release in its October 12, 2005 decision. AR 253-55.

Response: Agreed.

Respectfully submitted,

_____/s_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


_____/s_____
RUDOLPH CONTRERAS D.C. Bar No. 434122
Assistant United States Attorney


_____/s_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 353-9895