IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED TECHNOLOGIES CORPORATION, PRATT & WHITNEY DIVISION )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES DEPARTMENT OF DEFENSE, et al. )<br><br>Defendants. ) | Civil Action Number: 05-2271 (RWR) |

**MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO STRIKE**

Plaintiff's argument that the declarations submitted with Defendant's Motion for Summary Judgment are not properly before the Court and must be struck is meritless. In any APA case the "record may be supplemented to provide, for example, background information or evidence of whether all relevant factors were examined by an agency, See Environmental Defense Fund, 657 F.2d 275, 285 (D.C. Cir. 1981), (citing Asarco, Inc. v. EPA, 616 F.2d 1153, 1160 (9th Cir. 1980)), "[T]he new material should be merely explanatory of the original record and should contain no new rationalizations." Id. (citing Bunker Hill Co. v. EPA, 572 F.2d 1286, 1292 (9th Cir. 1977)); AT & T Information-Systems, Inc. v. General Services Admin., 810 F.2d 1233, 1236 (D.C. Cir. 1987).The declarations offered by Defendant do not offer any rationale not offered in the administrative record. An affidavit offered to elaborate on the agency's stated reason for releasing information over Plaintiff's objections is admissible. Lykes Bros. Steamship Co. v. Pena, 1993 U.S. Dist. LEXIS 20279, 24 25 (D.D.C. 1993) (affidavit elaborating on the

reasons for finding a lack of competitive harm, and providing a background for understanding the proposed redactions is not a post-hoc rationalization and is admissible).     Plaintiff objects to the introduction of the "Schmitt memorandum" which was the basis of the appellate authority overturning the IDA's determination in another FOIA request that release of CARs would impair DCMA's ability to gather similar information in the future.  The other FOIA case involved Sikorsky Aircraft a component of United Technologies, Corp., Plaintiff in the present case.  Plaintiff cited this decision by the IDA as evidence that DCMA was being arbitrary and capricious in the present case.  During the administrative process, DCMA informed plaintiff that DCMA headquarters had rejected the IDA's position.  Cross Motion p. 23; AR 254.  The memorandum introduced is the same one that was referenced in DCMA's denial of Plaintiff's request for reconsideration and Plaintiff continues to cite to the overturned IDA decision.  The memorandum, which was clearly referenced in the Administrative Record, demonstrates that the agency has been consistent.

    Similarly, Plaintiff objects to the introduction of affidavits from two DCMA officials describing their communications with Plaintiff regarding the audits at issue in this case.  These same messages were described by DCMA in its denial of Plaintiff's request for reconsideration. AR 254.   In the denial of Plaintiff's request for reconsideration, DCMA stated:

> You argue further that P&W s Quality Assurance System Procedures provide for advance notification by DCMA of all impending audits. We do not agree that P&W's internal procedures require advance notification of an impending audit. However, even if such advance notification was required, we believe that the inspection clause takes precedence over internal company procedures. But, despite our opinion that advance notice is not required, DCMA did in fact provide courtesy notification to Senior P&W management prior to each of the three audits. As to the July 2004 Weld Wire Audit, then DCMA P&W Commander, Lt Col Peter Leahy, notified P&W Senior Vice President, Larry Moore, of the upcoming

> audit **in an email dated June 17, 2004.** As to the September 2004 Manufacturing Fixture Control Audit, Lt Col Leahy notified Larry Moore of an upcoming "no notice" audit **in an email dated August 30, 2004.** As to the November 2004 Engine Center Audit, Acting DCMA P&W Commander, **Michael Klem, provided advance verbal notification to P&W Quality Managers, Allen and Pcholinski, during the October 28, 2004** Turbine Module Center Product Integrity Council meeting. Klem informed them that the audit at the Engine Center scheduled for November 8, 2004 would be counted as DCMA's next "no notice" audit. Based on the foregoing, DCMAE maintains that P&W was required to submit to the audits in question and therefore the audits, Level III CAR, and corresponding emails are not exempt from disclosure under Critical Mass.

AR 254 (emphasis added). The declarations contested by Plaintiff describe the communications described above. Clearly DCMA relied on these communications in reaching its decision and Plaintiff's contention that this amounts to a post hoc rationalization is meritless.

Likewise, the information in the Bogusz's declaration explains rationale contained in either DCMA's initial denial or denial of Plaintiff's request for reconsideration. Plaintiff contests paragraphs 11-13, 15, 17 and 22-27 of Mr. Bogusz's declaration. Paragraph 11 states

> With two exceptions, discussed below, I did not agree that P&W had voluntarily provided the information contained in the documents. Rather, I believe that P&W was required by the terms of its Government contracts to submit to a review of its quality system. Federal Acquisition Regulation 52.246-2, Inspection of Supplies, a standard inspection clause contained in most P&W Government contracts, requires P&W to maintain an inspection system that is acceptable to the Government and gives the Government the right to perform reviews and evaluations necessary to ascertain compliance. The information contained in the responsive documents is largely a compilation of the findings made by DCMA personnel during the course of their audits of the P&W quality system and correspondence regarding those findings. The two exceptions referred to above were: (1) the digital photographs taken by DCMA personnel during the performance of audits at P&W's manufacturing facility; and (2) P&W's written responses to DCMA's December 8, 2004, Corrective Action Requests.

DCMA discussed the contractual requirement for Plaintiff to provide the information in both its October 12, 2005 decision letter and its November 21, 2005 denial of reconsideration. In the

October letter Mr. Bogusz explains that "[h]owever, we disagree that the information was voluntarily provided to the Government. Rather, Pratt & Whitney was required by the terms of its contracts with the Government to submit to Government review of its quality system." AR 117. Although this statement alone would justify the explanation given by Mr. Bogusz in paragraph 11, the reconsideration denial even more explicitly referenced this information stating:

> Unlike the photographs, the captions do not constitute information voluntarily obtained from P&W. Rather, they contain the Government's independent assessments of the conditions that we observed during the audit. These independent assessments should be treated no differently than the same or similar assessments or observations contained in the November 2004 Engine Center Audit Report which we have determined are releasable....
>
> FAR[1] 52.246.-2, Inspection of Supplies - Fixed Price, requires contractors to provide and maintain an inspection system acceptable to the Government and authorizes the Government to perform reviews and evaluations as reasonably necessary to ascertain compliance with that requirement. While the Inspection Clause does state that these reviews and evaluations will be conducted in a manner that will not unduly delay the contract work, it does not require advance notice or establishment of a schedule before conducting such reviews or evaluations. Moreover, P&W has made no argument that it objected to any of these audits on the grounds that they would unduly delay the contract work.

AR 253, 254. The information in paragraph 11 of the Bogusz declaration condenses and explains his reasoning offered in both decision letters. Plaintiff's argument to strike this explanation is meritless.

    Paragraphs 12, 13, and 17 of the Bogusz declaration address the reasons DCMA had for agreeing to redactions requested by Plaintiff. Paragraph 12 addresses the photographs DCMA determined should be withheld as voluntarily obtained and the information determined to be releasable. As described above, DCMA withheld the photographs as voluntarily submitted while

---

[1] Federal Acquisition Regulation

determining that the remaining information was not voluntarily submitted.  Paragraph 12, simply explains the rationale for agreeing with Plaintiff that the photographs were voluntarily obtained.  Paragraph 13 explains the withholding of Plaintiff's written responses to the CAR.  Paragraph 17 explains the redaction of information quoting or describing Plaintiff's quality control or manufacturing processes.  An affidavit providing a background for understanding the proposed redactions is not a post-hoc rationalization and is admissible. Lykes Bros. Steamship Co. v. Pena, *supra*.  Additionally, one would assume that Plaintiff is not contending that DCMA's decision to withhold this information lacks support in the administrative record.

Paragraph 15 elaborates on DCMA's determination that release of the information at issue would not significantly impair DCMA's ability to obtain similar information in the future.  In its October 12, 2005 denial letter, DCMA concludes that because the information is required to be submitted by contract, release of the information would not significantly impair DCMA's ability to obtain similar information from Plaintiff or other contractors in the future.  AR 117.  Paragraph 15 addresses each of Plaintiff's threatened tactics and explains why the contractual requirement to allow the inspections negates the impact of each tactic.

Paragraphs 22-27 merely elaborate on DCMA's November 21, 2005 denial of Plaintiff's request for reconsideration.  Paragraph 22 explains DCMA's rationale for treating the photographs differently than the auditor's observations that accompanied those photographs.  The November 21, 2005 letter addressed the same issue stating:

> Unlike the photographs, the captions do not constitute information voluntarily obtained from P&W. Rather, they contain the Government's independent assessments of the conditions that we observed during the audit. These independent assessments should be treated no differently than the same or similar assessments or observations contained in the November 2004 Engine Center

5

Audit Report which we have determined are releasable.
AR 253. Paragraph 22 offers the same rationale for releasing these same observations.

Similarly paragraphs 23-25 explain DCMA's rejection of Plaintiff's argument that its quality control system requires advance notice of audits and therefore makes the auditors' observations voluntarily obtained. Paragraph 24 addresses the FAR inspection clause and why it allows for unannounced inspections. It is taken nearly verbatim from the paragraph at the bottom of AR 253 and the top of AR 254. Likewise paragraph 25 paraphrases the information in the next paragraph on AR 254. Mr. Bogusz explains that he disagreed that the Plaintiff's quality control system requires advance notice, that even if it did, the standard FAR inspection clause took precedence, and, finally, that regardless of any requirement for advance notice, DCMA had in fact informed plaintiff of the inspections. In denying Plaintiff's request for reconsideration, Mr. Bogusz stated the same reasons. The denial letter states:

> We do not agree that P&W's internal procedures require advance notification of an impending audit. However, even if such advance notification was required, we believe that the Inspection clause takes precedence over internal company procedures. But, despite our opinion that advance notice is not required, DCMA did in fact provide courtesy notification to Senior P&W management prior to each of the three audits.

AR 254. Clearly the statements in paragraphs 23-25 are not post hoc rationalizations.

Paragraph 26 of the declaration is essentially the same as the last paragraph on AR 254. Both the paragraph in the declaration and the paragraph in the reconsideration denial address Plaintiff's spurious contention that the decision of the Initial Denial Authority (IDA) in the Sikorsky FOIA case renders DCMA's decision arbitrary and capricious. In both documents, Mr. Bogusz explains that the IDA's decision was

overturned on appeal by DCMA headquarters based on the "Schmitt memorandum."

Finally, paragraph 27 mirrors the first full paragraph on the final page of the reconsideration denial. AR 255. Both paragraphs acknowledge that release of the information could be embarrassing to Plaintiff, but determined that the alleged embarrassment was not from the affirmative use of the information by competitors and that embarrassment does not rise to the level of competitive harm protected by Exemption 4.

The information Plaintiff seeks to strike is properly before the Court. The information offers no new rationalization and merely explains the existing record. For the Foregoing reasons, Plaintiff's Motion to Strike should be denied.

Respectfully submitted,

_____/s_____

KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


_____/s_____
RUDOLPH CONTRERAS D.C. Bar No. 434122
Assistant United States Attorney


_____/s_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 353-9895