**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED TECHNOLOGIES** | ) | |
| **CORPORATION,** | ) | |
| **PRATT & WHITNEY DIVISION** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action Number: 05-2271 (RWR)** |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF DEFENSE, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO**
**PLAINTIFF'S CROSS MOTION  FOR SUMMARY JUDGMENT**

In this "reverse" Freedom of Information Act case plaintiff, Pratt & Whitney Division of

United Technologies Corporation ("P&W"), seeks to prevent defendant, the United States

Department of Defense, Defense Contract Management Agency ("DCMA"), from releasing to

the public documents related to DCMA audits of the quality system at P&W, which DCMA

intends to disclose with certain redactions.

Plaintiff argues in opposition to Defendant's Motion for Summary Judgment and in

support of its cross motion for summary judgment that the release of the information would

cause Plaintiff substantial competitive harm and would impair the government's ability to obtain

 similar information in the future. Plaintiff also reiterates its contention that the information at

issue was voluntarily submitted.   Each of these contentions lacks merit.

**I.  Plaintiff Fails to Demonstrate That Release of the Information Would Cause it**

**Substantial Competitive Harm**

### A. DCMA Considered the Appropriate Factors to Determine Substantial Competitive Harm

Plaintiff alleges that DCMA's decision that release of the information at issue would not likely cause Plaintiff substantial competitive harm was arbitrary and capricious. In so doing, Plaintiff contends that, after asking P&W for its views on four factors regarding competitive harm, DCMA addressed only one of these factors (the type and degree of commercial injury) in its decision. This argument misses the fundamental point of DCMA's decision letters, which is that Plaintiff failed to identify any legally cognizable commercial injury that would flow from release of the information at issue. . AR 255. Since this failure is fatal to Plaintiff's claim of competitive harm, it obviated the need for DCMA to address any of the other three factors.

Plaintiff's proffered injury, embarrassment from negative publicity is not the kind of competitive harm protected by Exemption 4 under the controlling case law. *See* Public Citizen Health Research Group v. FDA, 704 F2d 1280 (D.C. Cir. 1983) (competitive harm in the FOIA context is limited to harm flowing from the affirmative use of proprietary information by competitors, not simply any injury to competitive position, as might flow from customer or employee disgruntlement). Obviously the agency cannot change this requirement for withholding under Exemption 4. So, once DCMA had considered this key requirement and rendered a decision on its applicability to this case, it had no need to address any other factors relating to competitive harm. Therefore, DCMA's failure to address these other factors does not render its decision arbitrary and capricious.

### B. DCMA's Decision Had Ample Support in the Administrative Record

Plaintiff next alleges that DCMA's decision lacked support in the record and ignored the contrary evidence in affidavits submitted by Plaintiff.   Cross Motion at 19.  These arguments must fall for two reasons,   First, it is obvious that DCMA did carefully consider the submissions made by Plaintiff, because it amended its decision based on information contained in those submissions.  AR 118.  Second, there is ample evidence in the Administrative Record to support DCMA's decision that release of the information at issue, with the descriptions of Plaintiff's quality control system redacted, would not cause competitive harm flowing from affirmative use of the information by Plaintiff's competitors.  AR 255.  As DCMA went on to state that, "at most we believe that release of the information could be embarrassing to P&W.  But embarrassment does not rise to the level of substantial competitive harm recognized by the courts."  AR 255.  The evidence and legal authorities cited below fully support this conclusion.

The Affidavits submitted by Plaintiff repeatedly allege that release of the information would be used "to discredit Pratt's quality control system," (AR 45) and that "the Level III CAR contains information critical of Pratt's quality control system and practices that Pratt's competitor would use to undermine the credibility, effectiveness, and reliability of Pratt's quality control." AR 46.  With regard to its foreign customers, Plaintiff stated:

> Even if the foreign customer decides to give Pratt the opportunity to respond to these claims, Pratt would find itself on the defensive explaining to such customer (1) why the information in the documents does not reveal significant problems with the quality control system at Pratt; (2) the context of each of the identified problems, which is essential to understanding their significance; and (3) how and to what extent each of the problems identified in the documents has been fixed.

AR 51.  Finally, Plaintiff offered the opinion that

> Our competitors will undoubtedly use the information in these documents in communications with customers and potential customers to contend that the PW4000 and PW6000 engines and our many service products are inferior to

3

theirs and to assert that P&W's quality control systems are weak and unreliable.

AR 50. The quoted sections demonstrate that Plaintiff's contention to the agency was, and apparently still is, that if the information is released its customers will believe, correctly or incorrectly, that Plaintiff's quality control system is weak and that its products are therefore unreliable. DCMA reasonably concluded that even if true, this kind of embarrassment does not amount to substantial competitive harm protected by Exemption 4. This dissatisfaction by Plaintiff's customers and potential customers is precisely the type of embarrassment-based argument the Court rejected as insufficient to support an Exemption 4 claim of competitive harm in Center to Prevent Handgun Violence v. United States Dep't of the Treasury, 981 F. Supp. 20, 23 (D.D.C. 1997). As discussed below, Plaintiff's claim that its competitors would point out the embarrassing information to its customers does not transform this embarrassment into substantial competitive harm.

### C. Plaintiff's Contention That its Competitors Would Point out the Negative Information to its Customers Does Not Amount to an Affirmative Use of Proprietary Information

Plaintiff attempts to distinguish its claimed injury from that rejected in Center to Prevent Handgun Violence v. United States Dep't of the Treasury, by alleging that its competitors would affirmatively use the negative information. Cross Motion p. 20. However, its alleged injury stems from the possibility that a competitor might criticize Plaintiff to a customer. AR 44, 45, 50, 51. As quoted in section I. B. above, Plaintiff's affidavits allege that its competitors will "communicate with its customers" (AR 50), "discredit Pratt's quality control system" and "undermine the credibility, effectiveness, and reliability of Pratt's quality control" AR 46.

The D.C. Circuit has held that "[c]ompetitive harm should not be taken to mean simply

4

any injury to competitive position, as might flow from customer or employee disgruntlement or from the embarrassing publicity attendant upon public revelations concerning, for example, illegal or unethical payments to government officials or violations of civil rights, environmental or safety laws," Public Citizen Health Research Group v. Food & Drug Admin., 704 F.2d 1280, 1291 (D.C. Cir. 1983) at 1291 n.30.  Plaintiff is alleging customer disgruntlement over public revelations concerning deficiencies in its quality control system.  Although Plaintiff acknowledges this limitation, it does not explain how its alleged injury differs from that rejected in Center to Prevent Handgun Violence.

Plaintiff attempts to equate its alleged injury with that endorsed in McDonnell Douglas Corp. v. United States, 375 F.3d 1182  (D.C. Cir. 2004) by arguing that competitors would make their proposals more attractive in ways in addition to price.  Cross Motion p. 20.  McDonnell Douglas involved the direct use of pricing information in forming a competitive proposal. The Court in McDonnell Douglas stated "[w]e conclude disclosure of McDonnell Douglas's option year prices would likely cause McDonnell Douglas substantial competitive harm **by informing the bids** of its rivals in the event the contract is rebid." *Id.* at 1190 (emphasis added). McDonnell Douglas does not transform embarrassment from public disclosure into substantial competitive harm simply by alleging that competitors will point out the embarrassing information to customers.

To the extent Plaintiff demonstrated that the information proposed for release would allow a competitor to affirmatively use the information to revise and improve its own quality control system, DCMA redacted that information.  AR 118.  Although Plaintiff alleges in a footnote in both its cross motion and its submission to the agency that it disagrees that the

redactions are sufficient to alleviate this harm, it provided no support for this contention. Cross Motion p. 16 n.4; AR 239 n 3. This unsubstantiated allegation is patently insufficient to satisfy Plaintiff's burden of proof.

**II.  Plaintiff Fails To Show That Release Of The Information Will Impair The Government's Ability To Collect Such Information In The Future**

**A.  DCMA Applied the Appropriate Legal Standard**

Plaintiff contends that DCMA applied the wrong legal standard by determining that release of the information would not *significantly* impair the government's ability to obtain similar information in the future. Cross Motion p. 13. Plaintiff claims that the appropriate standard only requires a showing that release is "likely to impair." However, Plaintiff ignores the D.C. Circuit's holding in Washington Post Co. v. United States Dep't of Health & Human Services, 690 F.2d 252 (D.C. Cir. 1982) requiring that the impairment be "significant" to overcome the disclosure mandate of FOIA. The Court stated: "[a] minor impairment cannot overcome the disclosure mandate of FOIA. Rather, the question must be whether the impairment is significant enough to justify withholding the information." *Id.* at 269.

**B.  Deferral to the Government Is Appropriate**

Plaintiff contends that release of the information contained in the documents would impair DCMA's ability to obtain information of the same quality, reliability, and detail in the future and would adversely affect the effectiveness and efficiency of DCMA's quality control program. The government is in the best position to determine the effect of disclosure on future bidding situations. As a result, courts should defer to the administrative agency's determination that release will not cause impairment. McDonnell Douglas Corp. v. NASA, 981 F. Supp. 12, 15-16 (D.D.C. 1997), rev'd on other grounds 180 F.3d 303 (1999). The rationale for showing

deference in such cases is that the agency "has an incentive not to release information which will impair its future ability to successfully contract," and therefore if the agency is willing to release information, it can be safely assumed that the agency is acting to protect its ability to contract in the future and to obtain the information necessary to administer those contracts. Ctr. for Pub. Integrity v. DOE, 191 F. Supp. 2d 187, 196 (D.D.C. 2002).

Plaintiff cites three cases for the proposition that an agency's determination of no likely impairment must be set aside if the party seeking withholding produces a "detailed factual justification" showing that disclosure will impair the government's ability to acquire the information in the future. The first, Washington Post Co. v. United States Dep't of Health & Human Services, 690 F.2d 252, 255 (D.C. Cir. 1982), is a FOIA case requiring the agency to make a detailed factual justification for withholding. It does not address the deference due an agency's determination that its ability to obtain information will not be impaired. The second, Artesian Industries, Inc. v. Department of Health & Human Services, 646 F. Supp. 1004, (D.D.C. 1986), in rejecting a claim very similar to Plaintiff's stated:

> Artesian argues that if HHS discloses the memorandum at issue, businesses from whom the government requests information in the future will withhold as much information as possible by reading the term "necessary" very narrowly. In addition, businesses will thereafter view governmental requests for information adversarially, causing the government greater expenses, delays, and inefficiencies. The plaintiff provides no support for this argument, and similar reasoning has been rejected in this jurisdiction. See Dynalectron, supra, memorandum, No. 83-3399 at 9.

> More properly, the Court is guided by the reasoning of Washington Post Company v. HHS, 223 U.S. App. D.C. 139, 690 F.2d 252 (D.C. Cir. 1982). In this decision, the United States Court of Appeals for this Circuit held that a party must produce a "detailed factual justification" showing that disclosure will impair the government's ability to acquire this information in the future before a court will direct an agency to withhold information. Id. at 269. As usual, the burden of proof is on Artesian, the party seeking to avoid disclosure. 5 U.S.C. § 552(a)(3);

7

> Kleppe, supra, 547 F.2d at 679 n.20. n9 Artesian has provided no factual evidence
> to support its conclusion that the information in its memorandum is confidential;
> thus, its argument fails.

*Id*. at 1009-1010 (D.D.C. 1986). The third case, an unpublished District Court case only

addressed the impairment prong in a footnote stating:

> Alternatively, plaintiff could establish its exemption by showing that disclosure
> would impair the government's ability to obtain necessary information in the
> future. National Parks and Conservation Ass'n v. Morton, 498 F.2d 765, 770
> (D.C. Cir. 1974). Plaintiff raised this issue in its trial brief at 7-8, but offered no
> evidence to support the argument at trial. It thus has failed to carry its burden of
> proof

American Scissors Corp. v. GSA, 1983 U.S. Dist. LEXIS 11712, n.2 (D.D.C. 1983).

Defendant is aware of no case where the Court has found the government's ability to

acquire information will be impaired where the agency itself has determined that no impairment

is likely. The Court need not determine whether it is ever possible for a submitter to make such

a showing because Plaintiff clearly has not made an adequate factual showing in this case.

Plaintiff's allegations that it will take steps to hinder DCMA's ability to gain the information are

irrelevant because the information at issue, government observations contained in Quality

System Audit Reports and CARs, was gained in the course of contractually authorized

inspections. AR 254, DEX 1 to Defendant's Motion for Summary Judgment ¶ 15a. In rejecting

a similar argument, this Court noted "Interestingly enough, Boeing at no point represents that

should USAF disclose the contested information here, it would no longer apply for government

contracts that required submission of information regarding the bidder's costs." McDonnell

Douglas Corp. v. United States Dep't of the Air Force, 215 F. Supp. 2d 200, 206, n.4 (D.D.C.

2002), rev'd in part on other grounds, 375 F.3d 1182 (D.C. Cir. 2004). Similarly, Plaintiff here

does not allege that it would stop bidding on government contracts. Because the contracts

require submission to the inspections that lead to the Quality System Audit Reports and CARs, the lesser steps Plaintiff contends it would take would not significantly impair the government's ability to gain similar information in the future.

### C.  The Decision by a DCMA Initial Denial Authority regarding another FOIA case, Overturned by DCMA Headquarters on Administrative Appeal, Is Irrelevant to the Case at Issue

In contending that the agency decision in this case is arbitrary and capricious, Plaintiff points to  a contrary decision by a DCMA Initial Denial Authority (IDA) in a FOIA case involving Sikorsky Aircraft contracts.  But that DCMA IDA decision, concluding that the release of CARs would impair DCMA's ability to obtain similar information in the future, had been overturned on appeal by DCMA Headquarters and the Plaintiff acknowledges that it was made aware of this fact during the administrative processing of this case. Cross Motion p. 23; AR 254. The Schmitt memorandum, authored by the senior quality assurance official in DCMA and cited in both the administrative decisions and Mr. Bogusz's declaration, clearly shows that the agency has been consistent in its position that releasing CAR's would not impair DCMA's ability to gather similar information in the future.

Plaintiff's continued citing to the IDA's finding in the Sikorsky case is disingenuous at best.  Since the decision of an IDA is appealable to the head of agency under 5 U.S.C. § 552(a)(6)(A), it  is obviously not binding on the agency as a whole.  And, in the Sikorsky case, the IDA decision upon which Plaintiff relies was in fact overturned on appeal.  The same is also true of the Plaintiff's claim that the judgment of "quality assurance professionals" was overturned by a "contracts official in Washington." i.e., then DCMA Executive Director, Mr. Robert Schmitt, in the Sikorksy case.  Mr. Schmitt is part of DCMA and, was at the time

responsible for DCMA's quality assurance mission.  Attachment 1 to Bogusz Declaration.

Therefore, whatever limited relevance the IDA's determination in the Sikorsky matter had

regarding this case has been eliminated by DCMA's decision overturning that determination on

administrative appeal.

### III.  The information at issue was Required under Plaintiff's Contracts

Plaintiff contends the information at issue was voluntarily submitted because its quality

assurance system procedures require advance notice of all inspections.  Cross Motion p. 16.

DCMA addressed this contention in the administrative record. AR 254-255.  Even if P&W's

internal quality assurance system required advance notice, which DCMA contests, the FAR

inspection clause takes precedence and clearly does not require advance notice of inspections.

48 C.F.R. 52.246-2 Inspection of Supplies –Fixed Price, Paragraph (b) requires the contractor to

maintain an inspection system that is acceptable to the Government and gives the Government

the right to perform reviews and evaluations necessary to ascertain compliance with the

requirements of paragraph (b).   The only condition placed on the Government's reviews by the

above-cited Inspection Clause is that the reviews be "conducted in a manner that will not unduly

delay the contract work."  The Inspection Clause does not require advance notice or

establishment of a schedule before conducting such reviews.

DCMA went on to note that even if notice were required under the contract, DCMA had,

in fact, given advance notice to Plaintiff's upper management.  AR 254-255.  The Government

inspector's observations, recorded in the CAR, were treated differently than the photographs

because while the contract allows DCMA to conduct inspections, the contract is silent on the use

of cameras.

Although 48 C.F.R. 52.246-2 is clear on the matter, this Court does not need to resolve the issue of whether the contract allows for unannounced inspections because DCMA did give Plaintiff notice of the inspections. AR 254. In each instance it was clear that DCMA was "informing" Plaintiff it would be conducting the audits and was not asking for permission to do so. AR 254, DEX 2 and DEX 3 Defendant's MSJ. To the extent that the contracts called for notice of the inspections, notice was given.

## IV. Defendant's Explanatory Information Is Properly Before the Court

Plaintiff's argument that the declarations submitted with Defendant's Motion for Summary Judgment are not properly before the Court and must be struck is meritless. In any APA case the "record may be supplemented to provide, for example, background information or evidence of whether all relevant factors were examined by an agency, See Environmental Defense Fund, 657 F.2d 275, 285 (D.C. Cir. 1981) (citing Asarco, Inc. v. EPA, 616 F.2d 1153, 1160 (9th Cir. 1980)), "[T]he new material should be merely explanatory of the original record and should contain no new rationalizations." Id. (citing Bunker Hill Co. v. EPA, 572 F.2d 1286, 1292 (9th Cir. 1977)); AT & T Information-Systems, Inc. v. General Services Admin., 810 F.2d 1233, 1236 (D.C. Cir. 1987). The declarations offered by Defendant do not offer any rationale not offered in the administrative record. An affidavit offered to elaborate on the agency's stated reason for releasing information over Plaintiff's objections is admissible. Lykes Bros. Steamship Co. v. Pena, 1993 U.S. Dist. LEXIS 20279, 24-25 (D.D.C. 1993) (affidavit elaborating on the reasons for finding a lack of competitive harm, and providing a background for understanding the proposed redactions is not a post-hoc rationalization and is admissible).

Plaintiff objects to the introduction of the "Schmitt memorandum" which was the basis of

the appellate authority overturning the IDA's determination in another FOIA request that release of CARs would impair DCMA's ability to gather similar information in the future.  Plaintiff cited this decision by the IDA as evidence that DCMA was being arbitrary and capricious in the present case.  During the administrative process, DCMA informed plaintiff that DCMA headquarters had rejected the IDA's position.  Cross Motion p. 23; AR 254.  The memorandum introduced is the same one that was referenced in DCMA's denial of Plaintiff's request for reconsideration and Plaintiff continues to cite to the overturned IDA decision.  The memorandum, which was clearly referenced in  the Administrative Record,  demonstrates that the agency has been consistent.

Similarly, Plaintiff objects to the introduction of affidavits from two DCMA officials describing their communications with Plaintiff regarding the audits at issue in this case.  These same messages were described by DCMA in its denial of Plaintiff's request for reconsideration. AR 254.   Likewise, the information in the Bogusz declaration explains the rationale contained in either DCMA's initial denial or denial of Plaintiff's request for reconsideration.  *See* Defendant's response to Plaintiff's Motion to Strike.

## CONCLUSION

DCMA's decision was based on a consideration of the relevant factors and the agency's rationale can be readily discerned from the Administrative Record.  DCMA's decision to release the requested documents with redactions is neither arbitrary, capricious nor contrary to law.  Rather the release of the documents is compelled by, and consistent with the goals of, the FOIA.  Accordingly, for the foregoing reasons and those in Defendant's initial Motion, Defendants are entitled to Summary Judgment.

Respectfully submitted,


_____/s_____
 KENNETH L.  WAINSTEIN, D.C.  Bar #451058
United States Attorney


_____/s_____
RUDOLPH CONTRERAS D.C. Bar No.  434122
Assistant United States Attorney


_____/s_____
KEVIN K. ROBITAILLE
Special Assistant U.S.  Attorney
555 Fourth Street, N.W.,
Washington, D.C.  20530
(202) 353-9895

13