IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED TECHNOLOGIES CORPORATION, PRATT & WHITNEY DIVISION <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF DEFENSE, et al. <br><br> Defendants. | Civil Action Number: 05-2271 (RWR) |

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE**

**INTRODUCTION**

The Department of Justice ("DOJ") argues that the Court can consider its litigation affidavits and other extra-record materials as part of the administrative record because they do not provide additional rationales for DCMA's decision, but merely explain and elaborate on DCMA's actions. These assertions are both factually incorrect and without legal support. First, even if the extra-record materials were merely explanatory or elaborative, which they are not, they could not be considered unless the Court first found the existing administrative record to be inadequate in one of several narrowly defined areas. DOJ has made no showing that the existing administrative record is deficient in any way, and the *DOJ does not even argue that it is.* Second, contrary to DOJ's assertions, the litigation affidavits at issue, as well as some of the other extra-record materials, are not merely explanatory and elaborative. They offer new

631577.2

rationales, not present in the administrative record, for DCMA's decision.  The law of this Circuit is clear that under no circumstances can litigation affidavits offering post-hoc rationales for an agency decision be considered by the reviewing court.  *See AT&T Info.-Sys. v. GSA,* 810 F.2d 1233 (D.C. Cir. 1987); *see also Alexander & Alexander Servs. Inc. v. SEC*, Civil Action No. 92-1112, 1993 U.S. Dist. LEXIS 14945 at 37-38 (D.D.C. Oct. 19, 1993) ("[l]itigation affidavits offering post-hoc rationalizations are clearly prohibited.")

## ARGUMENT

**I.    CONSIDERATION OF EXTRA-RECORD MATERIALS WOULD SWALLOW THE RULE LIMITING JUDICIAL REVIEW TO THE ADMINISTRATIVE RECORD.**

The D.C. Circuit has recently reiterated its long-settled rule that when reviewing an agency decision under the arbitrary and capricious standard, "the focal point for judicial review should be the administrative record already in existence, not some new record completed in the reviewing court."  *See Tripoli Rocketry Ass'n, Inc. v. ATFE*, 437 F.3d 75, 83 (D.C. Cir. 2006) quoting *Envtl. Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981).  Courts have recognized only a limited number of exceptions to this general rule and have permitted supplementation of the administrative record only where there has been a showing "that the agency failed to examine all relevant factors or to adequately explain its grounds for decision, or that the agency acted in bad faith or engaged in improper behavior in reaching its decision," *see IMS, P.C. v. Alvarez*, 129 F.3d 618, 624 9D.C. Cir 1997), or where the agency failed "to explain [its] action [s] as to frustrate effective judicial review."  *See Camp v. Pitts*, 411 U.S. 138, 142-43 (1973).  And, even where such exceptional circumstances are found to exist, any "new materials should be merely explanatory of the original record . . . ."  *Environ. Defense Fund,* 657 F.2d at 285.

In asking the Court to consider extra-record materials in this case, DOJ does not even argue, much less establish, that any of the recognized exceptions to the general rule precluding consideration of extra-record evidence exist in this case.  DOJ does not argue that the agency failed adequately to explain the grounds for its decision, or that it acted in bad faith, or that it engaged in improper behavior, or that it so failed to explain its action so as to frustrate effective judicial review.  Instead, DOJ merely asserts that the extra-record material can be considered because it does not provide post-hoc rationales for DCMA's decision.  Even if that assertion were correct, which it is not (see discussion *infra*), that would not constitute a basis for permitting consideration of this evidence which is not a part of the administrative record.  Before a court may consider even purely explanatory or elaborative extra-record materials, it must first find that one of the narrow exceptions to the general preclusive rule exists.  *See Environ. Defense Fund,* 657 F.2d at 285 ("*When the record is inadequate*, a court may obtain from the agency . . . such additional explanations of the reasons for the agency decision as may prove necessary.  The new materials should be merely explanatory of the original record . . .") (emphasis added).  There is no basis on which to make such a finding in this case.

Nor is there any basis on which to conclude that the extra-record material offered by DOJ would be of any assistance to the Court.  To the contrary, according to DOJ, the new materials offer nothing substantively new.  For example, DOJ describes the portions of the Bogusz declaration at issue as "nearly taken verbatim," "paraphrase[ing]," "mirror[ing]," "offering the same rationale for," or "essentially the same as" DCMA's decisions.  DOJ Opposition Mem. ("Opp. Mem.") at 6-7.  The Court is plainly capable of reading and understanding DCMA's decisions itself; it does not need DOJ's proffered extra-record materials to paraphrase or summarize the decision for it.  Therefore, no reason exists for the Court to depart from the settled

rule that limits its review to the existing administrative record. *Tripoli Rocketry*, 437 F.3d at 83 ("even if we were inclined to credit the affidavit, it proves nothing of consequence in this case . . ."); see also *Alexander & Alexander Servs., Inc.*, 1993 U.S. Dist. LEXIS 12945 at 38 (refusing to consider affidavits purported to provide background information because they would not affect the outcome of the case).

The three cases on which DOJ relies are not to the contrary. As noted, *Environmental Defense* limits consideration of extra-record material to cases where the record is inadequate. 657 F.2d at 285. In *AT&T Information-Systems,* the D.C. Circuit refused to consider a litigation affidavit such as those at issue here because it sought to provide post-hoc rationalizations to support the agency's decision. 810 F.2d at 1236. And, in *Lykes Bros. Steamship Co. v. Pena*, 1993 U.S. Dist. LEXIS 20279, 24, 25 (D.D.C. 1993), the court reaffirmed this Circuit's repeated admonition that extra-record material "should contain no new rationalizations for the agency decision under review." As discussed below, the extra-record material at issue here provides new rationalizations for DCMA's decision to release P&W's confidential commercial information, and consistent with the cases on which DOJ itself relies, this material should not be considered by the Court.

## II. MUCH OF THE EXTRA-RECORD MATERIAL PROVIDES NEW RATIONALES FOR DCMA'S DECISION.

As noted, it is the settled law of this Circuit that consideration of extra-record materials offering post-hoc rationalizations for an agency decision are clearly prohibited. *See AT&T Info.-Sys.,* 810 F.2d at 1236. This rule was recently reaffirmed by the D.C. Circuit in *Tripoli Rocketry Association*. 437 F.3d at 83. DOJ does not dispute that this is the law. The Schmitt Memorandum and portions of the Declaration of Michael T. Bogusz ("Bogusz Declaration") offer post-hoc rationales for DCMAE's decision and should therefore be stricken.

### A. Bogusz Declaration

In several instances, the Bogusz Declaration attempts to provide rationales for DCMA's decision that do not appear in the administrative record. For example, in paragraph 15, subparagraphs c-e, Mr. Bogusz purports to refute P&W's argument that release of its information would likely impair DCMAE's ability to obtain necessary information in the future, providing reasons why P&W would not be able to hinder collection of information. Mr. Bogusz provides the following response to the specific instances of potential impairment raised by P&W:

> c. There is nothing to preclude P&W from monitoring all discussions between DCMA and P&W floor employees. But, that monitoring does not in any way eliminate P&W's obligation to cooperate in the audit.
>
> d. There is nothing in the Inspection Clause that requires the Government to reduce to writing its audit questions. Therefore, P&W cannot require written submissions from DCMA auditors.
>
> e. While P&W may require its personnel to obtain management and counsel review before responding to questions from DCMA inspectors, P&W may not unduly delay the Government's performance of an audit. Undue delay could result in a finding that the P&W's quality system is not acceptable to DCMA and a DCMA refusal to accept, on behalf of the U.S. Government product that is produced in accordance with that quality system.

He then asserts that these reasons constitute the rationale for his decision to release P&W's confidential commercial information, stating, "So, while P&W's proposed action might lengthen the DCMA review process, I did not believe that this would result in any significant impairment of DCMA's ability to perform its oversight of the P&W quality system." Bogusz Declaration ¶ 15e.

However, no such rationale appears in the administrative record. Rather, the DCMA decision letters that are part of the administrative record address P&W's impairment arguments with conclusory statements that simply assert that release of the information would not result in impairment and a note that the finding of no impairment is consistent with the agency's position

in the Sikorsky matter. AR 117, 254-55. Unlike the above-referenced subparagraphs in the Bogusz Declaration, DCMA's decision letters made no attempt to rebut the specific instances in which P&W asserted that release of the documents would result in impairment in the future. Because subparagraphs c-e of Mr. Bogusz's Declaration provide a new rationale for DCMA's decision, they must be stricken under the law of this Circuit.

Similarly, in paragraphs 17 and 27, Mr. Bogusz provides additional rationale for his rejection of P&W's argument that release of these documents was likely to cause P&W substantial competitive harm. P&W had argued that release of documents critical of its quality assurance program would allow its competitors to use this information in their own proposals to make their proposals more attractive and thereby underbid P&W. In rejecting P&W's competitive harm claim, DCMA's initial decision only contains the conclusory assertion that that release of the information would not result in substantial competitive harm to P&W (AR 117), and DCMA's decision denying P&W's request for reconsideration merely states that the agency did not "believe that P&W has established the likelihood of substantial competitive harm flowing from P&W's competitor's affirmative use of the information contained in the DCMA documents." AR 255. Neither decision provides a rationale for these conclusions.

P&W's specific argument that competitors could use its information to make their proposals more attractive and underbid P&W went totally unaddressed by DCMA until DOJ filed the Bogusz Declaration. There, Mr. Bogusz states that he "did not believe that the information *could* be affirmatively used by P&W's competitors to make their own proposals more attractive or to underbid P&W" and *"[t]herefore concluded* that the release of the remaining information would not likely result in substantial competitive harm to P&W." Bogusz Declaration ¶ 17 (emphasis added). *See also* Bogusz Declaration ¶ 22 ("I did not see how

P&W's competitors could use the information to underbid P&W or to make their own proposals and/or products better. *For that reason*, I concluded that release of the documents, as redacted, would not result in substantial competitive harm to P&W.") (emphasis added). It is therefore clear that, contrary to DOJ's assertions, the Bogusz Declaration *does* provide additional rationales for DCMA's finding of no competitive harm and that these portions of the declaration should be stricken.

### B. Schmitt Memorandum

The Schmitt Memorandum[1] is the agency's decision on a similar issue in the Sikorsky case. The Memorandum explains the agency's rationale for rejecting Sikorsky's impairment claim in circumstances virtually identical to those here. The Schmitt Memorandum is not part of the administrative record certified by DCMA in this case, and by now attempting to have it considered, DOJ seeks to import into the decision in this case the rationale for rejecting the impairment claim in the Sikorsky case. As such, the Schmitt Memorandum constitutes a post-hoc rationale in this case, which cannot be considerer by the Court here.

DOJ asserts that the Court may consider the Schmitt Memorandum because "it was clearly referenced in the administrative record." Opp. Mem. at 2. However, a reference to a document does not mean that the document itself was before the DCMA official when he or she reached a decision or that its rationale was understood or considered by the official when making the decision. Moreover, DOJ neither moved to supplement the administrative record nor provided any authority for the proposition that a court may consider extra-record material simply because that material is *referenced* in the record. To the contrary, a presumption exists that an

---

[1] The Schmitt Memorandum reversed a decision in a case involving P&W affiliate Sikorsky Aircraft Corporation that release of Sikorsky's information will likely impair the Government's ability to obtain necessary information in the future.

agency includes in the administrative record *all* material that it actually considered in making its decision.  *Fund for Animals v. Williams*, 391 F. Supp 2d 191, 197 (D.D.C. 2005) ("the agency enjoys a presumption that it properly designated the administrative record absent clear evidence to the contrary").  The presumption is, therefore, that since the Schmitt Memorandum was *not* included in the record certified by DCMA, it was not a document that the decisionmaker considered, even though it may have been referenced.  The same principle applies to the affidavits of Michael J. Klem, Peter C. Leahy, the emails attached thereto, and the copy of P&W's internal audit procedures, which DOJ fails to even mention in its Opposition.

## CONCLUSION

For the foregoing reasons, P&W's motion to strike should be granted.

Respectfully submitted,

/s/  Robert K. Huffman
ROBERT K. HUFFMAN (D.C. BAR NO. 219915)
EMMETT B. LEWIS (D.C. BAR NO. 308627)
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C.  20005-5701
(202) 626-5824
(202) 628-0858 facsimile
Attorneys for Plaintiff
United Technologies Corporation,
Pratt & Whitney Division

- 9 -

*Of Counsel:*

LESTER K. KATAHARA (D.C. BAR NO. 367691)
PRATT & WHITNEY MILITARY ENGINES
400 Main Street M/S182-30
East Hartford, CT 06108
(860) 565-5416
(860) 755-5878 facsimile

LEAH E. FRAZIER (D.C. BAR NO. 492540)
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C.  20005-5701
(202) 626-6086
(202) 628-0858 facsimile

Dated:  July 24, 2006