IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED TECHNOLOGIES CORPORATION, PRATT &WHITNEY DIVISION,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE, et al.<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action Number: 05-2271 (RWR)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR
<u>SUMMARY JUDGMENT</u>**

> ROBERT K. HUFFMAN (D.C. BAR NO. 219915)
> EMMETT B. LEWIS (D.C. BAR NO. 308627)
> MILLER & CHEVALIER CHARTERED
> 655 Fifteenth Street, N.W., Suite 900
> Washington, D.C.  20005-5701
> (202) 626-5824
> (202) 628-0858 facsimile
>
> Attorneys for Plaintiff
>
> United Technologies Corporation,
> Pratt & Whitney Division

<u>Of Counsel</u>:

LESTER K. KATAHARA (D.C. BAR NO. 367691)
PRATT & WHITNEY MILITARY ENGINES
400 Main Street M/S182-30
East Hartford, CT 06108
(860) 565-5416
(860) 755-5878 facsimile

LEAH E. FRAZIER (D.C. BAR NO. 492540)
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, D.C.  20005-5701
(202) 626-6086
(202) 628-0858 facsimile

Dated:  July 24, 2006

628637.3

# TABLE OF CONTENTS

ARGUMENT ..........................................................................................................................1

I.   DCMA'S CONCLUSION THAT RELEASE OF THE INFORMATION AT ISSUE WOULD NOT LIKELY CAUSE P&W SUBSTANTIAL COMPETITIVE HARM WAS ARBITRARY AND CAPRICIOUS ................................................................................................................1

   A.   DCMA Admittedly Failed To Consider All Relevant Factors In Determining That Release Of The Information Would Not Likely Cause P&W Substantial Competitive Harm. ................................................................................................1

   B.   P&W's Affidavits Demonstrate Legally Cognizable Commercial Injury. .................................................................................3

II.  DCMA APPLIED THE WRONG LEGAL STANDARD AND ACTED ARBITRARILY AND CAPRICIOUSLY IN DETERMINING THAT RELEASE OF THE INFORMATION AT ISSUE WOULD NOT SIGNIFICANTLY IMPAIR ITS ABILITY TO OBTAIN SIMILAR NECESSARY INFORMATION FROM P&W AND OTHER DOD CONTRACTORS IN THE FUTURE ..........................................6

   A.   DCMA Applied The Wrong Legal Standard In Deciding The Impairment Issue. ......................................................................6

   B.   Even If DCMA's Legal Standard Were Correct, Its Determination That Release Of The Requested Information Would Not Significantly Impair Its Ability To Obtain Similar Necessary Information From P&W And Other DOD Contractors Was Arbitrary And Capricious. .....................................7

III. ALTERNATIVELY, THE INFORMATION AT ISSUE IS EXEMPT FROM DISCLOSURE UNDER *CRITICAL MASS* ........................................................9

CONCLUSION ....................................................................................................................10

628637.3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED TECHNOLOGIES CORPORATION, PRATT &WHITNEY DIVISION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action Number: 05-2271 (RWR) |
| UNITED STATES DEPARTMENT OF DEFENSE, et al. | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR
<u>SUMMARY JUDGMENT</u>**

Pursuant to the Court's Order dated July 3, 2006, Plaintiff United Technologies Corporation, Pratt & Whitney Division ("P&W") hereby respectfully submits its Reply To Defendants' Memorandum In Opposition To Plaintiff's Cross-Motion For Summary Judgment.

**<u>ARGUMENT</u>**

**I.   DCMA'S CONCLUSION THAT RELEASE OF THE INFORMATION AT ISSUE WOULD NOT LIKELY CAUSE P&W SUBSTANTIAL COMPETITIVE HARM WAS ARBITRARY AND CAPRICIOUS**

   **A.   <u>DCMA Admittedly Failed To Consider All Relevant Factors In Determining That Release Of The Information Would Not Likely Cause P&W Substantial Competitive Harm.</u>**

DCMA identified four factors that it deemed relevant in determining whether release of the requested information would likely cause substantial harm to P&W's competitive position and asked P&W to address each factor. AR 03-04. These factors were: (1) "the general custom or usage in your business regarding this type of information;" (2) the "number and position of persons who have, or have had access to the information;" (3) the "type and degrees of

628637.3

commercial injury that disclosure would cause;" and (4) "the length of time you feel confidential treatment is warranted." *Id.*

P&W's response to DCMA included affidavits that addressed each factor. AR 28-35, 37-39, 44-58. However, DCMA failed to discuss the relevant factors or P&W's affidavits in its decision to release the information at issue. AR 117. P&W argued in its opening brief that DCMA's failure to consider the relevant factors or P&W's affidavits rendered DCMA's decision to release the information arbitrary and capricious. Pl. Mem. at 7-8, *citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 41 (U.S. 1983).

DOJ's response concedes that DCMA "addressed only one of these factors (the type and degree of commercial injury) in its decision." Memorandum In Response To Plaintiffs' Opposition To Defendant's Motion For Summary Judgment And Opposition To Plaintiff's Cross Motion For Summary Judgment ("Opp. Mem.") at 2. DOJ asserts, however, that P&W's evidence regarding this factor demonstrated only "embarrassment from negative publicity," which DCMA allegedly found not to be a "legally cognizable commercial injury." *Id.* According to DOJ, that conclusion "obviated" DCMA's need to address the remaining three factors. *Id.*

Assuming *arguendo* that DCMA actually considered P&W's evidence regarding the type and degree of commercial injury and concluded that it failed to demonstrate any legally cognizable injury, that conclusion was erroneous. The type and degree of commercial injury demonstrated by P&W was not "embarrassment from negative publicity," but rather the competitive harm resulting from its competitors' affirmative use of the information at issue to make their own proposals more attractive and thereby underbid P&W. AR 34-35, 45-47, 50-52. Clearly, that injury is clearly legally cognizable. *See* Section I.B below. Consequently, DOJ's

attempt to justify DCMA's failure to consider all of the relevant factors is without merit. Furthermore, had DCMA considered all of the relevant factors, it could not have concluded that the competitive injury claimed by P&W was "embarrassment from negative publicity." Thus, DCMA's determination that the release of the information at issue would not likely cause P&W substantial competitive harm should be set aside as arbitrary and capricious.

### B. P&W's Affidavits Demonstrate Legally Cognizable Commercial Injury.

P&W presented extensive affidavit testimony concerning the "the type and degrees of commercial injury." AR 04. P&W affiants Raul Pereda and Michael Field testified that P&W's competitors would use the released information in their proposals and other communications with potential customers to discredit P&W's quality control system and to make their own proposals and products more attractive, thereby underbidding P&W and likely causing it substantial competitive harm. AR 45-47, 50-52. P&W affiant William Forthofer, Director of Quality for P&W Military Engines, testified that the information at issue includes detailed descriptions of P&W's proprietary quality control procedures, sensitive parts, and manufacturing processes and techniques, and that if this information were released, "a competitor with similar expertise could and would use this information to gain insights into the strengths and weaknesses of P&W's quality control system as well as manufacturing techniques and use those insights to revise and improve its own quality control and manufacturing systems." AR 35. This, Mr. Forthofer stated, "would allow [P&W's] competitors to make their proposals and products more attractive to customers and thereby underbid [P&W] in U.S. and foreign competitions for military and civilian aircraft engines." *Id.*

DOJ continues to mischaracterize P&W's testimony as evidencing only "embarrassment" or "customer disgruntlement" resulting from "public revelations." *See, e.g.,* Opp. Mem. at 5

3

("Plaintiff is alleging customer disgruntlement over public revelations concerning deficiencies in its quality control system."). Having so defined P&W's injury, DOJ asserts that "dissatisfaction by Plaintiff's customers and potential customers is precisely the type of embarrassment-based argument the Court rejected as insufficient to support an Exemption 4 claim of competitive harm in *Center to Prevent Handgun Violence v. United States*, 981 F. Supp. 20, 23 (D.D.C. 1997)." Opp. Mem. at 4. We have previously shown that *Center to Prevent Handgun Violence* and the other cases cited in DOJ's opening brief consistently distinguish "embarrassment" (or "customer disgruntlement") from the competitive harm flowing from a competitor's use of the released information, and consistently treat the latter as substantial competitive injury for purposes of Exemption 4. Pl. Mem. at 9-10. Indeed, *Center to Prevent Handgun Violence* expressly states that the harm contemplated by Exemption 4 "is that which may flow from competitors' use of the released information, not from any use made by the public at large or customers." 981 F. Supp. at 23. Thus, because P&W's affidavits identified the competitive harm in this case as flowing from P&W's competitors' affirmative use of the information, that harm cannot reasonably be labeled (or dismissed) as "embarrassment" or "customer disgruntlement."

Furthermore, the competitive injury asserted by P&W is its competitors' use of the information to make their proposals more attractive overall, not only with respect to price — the very harm found legally cognizable in *McDonnell Douglas Corp. v. U.S. Dept. of the Air Force*, 375 F.3d 1182, 1189 (D.C. Cir. 2004). DOJ asserts that *McDonnell Douglas* "does not transform embarrassment from public disclosure into substantial competitive harm simply by alleging that competitors will point out the embarrassing information to customers." Opp. Mem. at 5. But, P&W's affiants do not assert that P&W's competitors will simply "point out" the information to customers. Rather, they state that the competitors will use the information in their proposals and

4

other communications with customers to refashion their quality assurance systems or contrast their quality systems with P&W's and thereby make their proposals more attractive in ways in addition to price.  AR 34-35, 45-47, 50-52.

DOJ repeats its previous argument that *McDonnell Douglas* should be read to protect only "pricing information" and not information that a competitor could use to make its proposals more attractive in ways in addition to price.  Opp. Mem. at 5.  We have already shown that this argument is inconsistent with the plain language and the background of *McDonnell Douglas*.  Pl. Mem. at 10-11.  DOJ's argument is also inconsistent with its own concession that P&W has demonstrated legally cognizable competitive injury from release of the portions of the documents at issue that describe P&W's quality control procedures.  Opp. Mem. at 3, 5.[1]  P&W made exactly the same showing regarding these procedures that it made regarding the other information at issue — that P&W's competitors would use the information to make their own proposals more attractive in ways other than price and thereby underbid Pratt.  *Compare* AR 35-36 with AR 45-47 and 50-53.  DOJ concedes that this showing was adequate to demonstrate legally cognizable injury with respect to the quality procedures even though that information had nothing to do with "pricing," yet it maintains that the remaining quality-related information is ineligible for protection because it is not "pricing information."  Opp. Mem. at 5.  This fundamental inconsistency undermines DOJ's argument that *McDonnell Douglas* is limited to pricing information and underscores the arbitrariness of DCMA's decision to withhold only the quality procedures.

---

[1]  Even here, however, DCMA's redactions were insufficient to fully protect P&W's quality control procedures from disclosure.  *See* AR 239 n.3.

II. **DCMA APPLIED THE WRONG LEGAL STANDARD AND ACTED ARBITRARILY AND CAPRICIOUSLY IN DETERMINING THAT RELEASE OF THE INFORMATION AT ISSUE WOULD NOT SIGNIFICANTLY IMPAIR ITS ABILITY TO OBTAIN SIMILAR NECESSARY INFORMATION FROM P&W AND OTHER DOD CONTRACTORS IN THE FUTURE**

   A. **DCMA Applied The Wrong Legal Standard In Deciding The Impairment Issue.**

DOJ's response concedes that DCMA did not apply the "is likely to impair" standard set forth in *National Parks & Conservation Association v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974). Rather, as DOJ acknowledges, DCMA required P&W to show that release of the information at issue "would significantly impair" DCMA's ability to obtain necessary information from P&W and other DOD contractors in the future. Opp. Mem. at 6; AR 117, 254. DOJ seeks to justify DCMA's deviation from *National Parks* on the grounds that the D.C. Circuit stated in *Washington Post Co. v. United States Dep't of Health & Human Services*, 690 F.2d 252, 269 (D.C. Cir. 1982), that "[a] minor impairment cannot overcome the disclosure mandate of FOIA. Rather, the question must be whether the impairment is significant enough to justify withholding the information." Opp. Mem. at 6. However, this statement did not purport to overrule *National Parks*; rather, it simply explained that the "likely" impairment must be a significant rather than a minor one. Indeed, the *Washington Post* decision itself states that the applicable test is whether disclosure of the information "is likely to" impair the government's ability to obtain necessary information, and it cites *National Parks* for that test. 690 F.2d at 268. Accordingly, *Washington Post* provides no justification for requiring P&W to demonstrate that release of the information at issue "*would* significantly impair" DCMA's ability to obtain necessary similar information from P&W and other DOD contractors, and DCMA committed legal error in requiring it to do so.

6

### B. Even If DCMA's Legal Standard Were Correct, Its Determination That Release Of The Requested Information Would Not Significantly Impair Its Ability To Obtain Similar Necessary Information From P&W And Other DOD Contractors Was Arbitrary And Capricious.

P&W provided DCMA with extensive evidence that release of the information *would* significantly impair DCMA's ability to obtain necessary quality-related information from P&W and other DOD contractors. This evidence consisted of: (1) affidavits detailing the compensatory measures that P&W and other DOD contractors would likely take to curtail the voluntary flow of quality-related information to DCMA if the information in DCMA quality audit reports and Corrective Action Requests ("CARs") were disclosed to their competitors (AR 31-34, 38); and (2) DCMA's determination in denying a FOIA request for certain CARs issued to Sikorsky Aircraft Corporation that release of the CARs "will significantly impair our ability to obtain the same detail and quality of information from [Sikorsky] and other DOD contractors in the future and will have an adverse impact on the efficiency and effectiveness of the DCMA Quality Assurance Program." AR 41.

Despite this evidence, DCMA concluded that release of the information at issue would not significantly impair its ability to obtain necessary quality assurance system information from P&W and other contractors in the future. AR 254. This determination was arbitrary and capricious because it was unsupported by any evidence in the Administrative Record and ignored the contrary evidence in the Record in the form of P&W's affidavits and DCMA's impairment finding in the Sikorsky case. Pl. Mem. at 11-13; *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 41 (1983). To the extent DCMA's determination of no significant impairment could be said to be based on anything, it was based upon the fact that DCMA's finding of impairment in the Sikorsky case was overruled by the May 31, 2005 Memorandum of Robert Schmitt, a DCMA official. AR 254. However, Mr. Schmitt's

7

628637.3

Memorandum was not part of the Administrative Record in this case and therefore should not properly be considered by the Court in determining the reasonableness of DCMA's decision in this case.  *See* Plaintiff's Motion To Strike Extra-Record Materials Submitted By Defendant To Provide A Rationale And/Or Supporting Evidence For the Agency's Decision, filed April 24, 2006.

DOJ asserts that P&W's affidavits regarding the steps that P&W and other contractors would take to reduce the free-flow of quality-related information to DCMA are "irrelevant" because "the information at issue, government observations contained in Quality System Audit Reports and CARs, was gained in the course of contractually authorized inspections."  Opp. Mem. at 8.  In fact, the information in the quality audit reports and the Level III CAR involved in this case was *not* obtained in the course of inspections, but rather in the course of unscheduled *audits* of P&W's quality assurance system.  AR 31-33.  Accordingly, DOJ's reliance on contractual authorities regarding inspections is simply misplaced.  Moreover, even if P&W were contractually required to submit to unscheduled DCMA quality audits — a contention we dispute in Section III below — the quality-related information that P&W and other contractors would consider withholding if the information at issue were released is *different from and in addition to* the information that DCMA obtained in the course of the audits.  AR 34.  Thus, if the information at issue were released, DCMA's ability to obtain this *additional* quality-related information would be substantially impaired regardless of whatever contractual rights it may have to conduct unscheduled audits.

Finally, DOJ asserts that this Court should defer to DCMA's determination that release would not cause significant impairment because "the government is in the best position to determine the effect of disclosure on future bidding situations."  Opp. Mem. at 6, citing

8

*McDonnell Douglas Corp. v. NASA*, 981 F. Supp. 12, 15-16 (D.D.C. 1997), *rev'd on other grounds*, 180 F.3d 303 (D.C. Cir. 1999).  However, the impairment issue in this case does not involve the effect of disclosure on "future bidding situations;" rather, it involves the effect of disclosure on the day-to-day free-flow of information from DOD contractors to DCMA regarding the contractor's quality assurance system and activities.  AR 31-34, 38.  Consequently, DOJ's deference argument and the cases on which it is based are not applicable here.  *See McDonnell Douglas Corp. v. NASA*, 981 F. Supp. at 15 ("government contracting involves millions of dollars and it is therefore unlikely that release of this information will cause [the government] difficulty *in obtaining future bids*") (emphasis added); *see also Ctr. for Pub. Integrity v. DOE*, 191 F. Supp. 2d 187, 196 (D.D.C. 2002) (rationale for deferring to agency's impairment determination is that the agency "has the incentive not to release information which will impair its *future ability to successfully contract*") (emphasis added).  Thus, it is simply irrelevant whether P&W represented that "it would no longer apply for government contracts" (Opp. Mem. at 8); the critical question is whether P&W demonstrated that it is likely that DCMA's ability to obtain quality-related information that is currently provided on a voluntary basis would be significantly impaired if it released the information at issue.  P&W clearly made that showing, and DCMA's contrary conclusion is unreasonable.

### III. ALTERNATIVELY, THE INFORMATION AT ISSUE IS EXEMPT FROM DISCLOSURE UNDER *CRITICAL MASS*

P&W argued in its opening brief that the information at issue was voluntarily submitted — and therefore governed by *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871 (D.C. Cir. 1992) — because it was obtained during unscheduled quality system audits, and P&W's contracts do not provide for unscheduled audits.  Pl. Mem. at 15-17.

P&W asserted that the voluntarily obtained information at issue was exempt from disclosure because it was not the kind of information P&W customarily made available to the public. *Id.*

DOJ asserts that the information at issue was required by P&W's contracts because the information was obtained during inspections and because the Inspection Clause in P&W's contracts (48 C.F.R. 52.246-2) authorizes unannounced inspections. Opp. Mem. at 10-11. This argument misses the mark. The information at issue was not obtained during inspections, but rather during an audit of P&W's Engine Center quality system. AR 31-33. A quality system differs from an inspection of supplies, and the Inspection Clause is therefore inapplicable. Quality system audits are governed by different contract requirements, including the requirement of advance notice, and the Engine Center Audit was not conducted pursuant to those requirements. *Id.* DOJ's argument that advance notice of the audit was given is based upon documents that are not part of the Administrative Record, and therefore should not be considered. Pl. Mem. at 16-17.

## CONCLUSION

For the reasons stated above and in P&W's opening brief, P&W's Cross-Motion For Summary Judgment should be granted.

628637.3

Respectfully submitted,

/s/ Robert K. Huffman
ROBERT K. HUFFMAN (D.C. BAR NO. 219915)
EMMETT B. LEWIS (D.C. BAR NO. 308627)
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, D.C. 20005-5701
(202) 626-5824
(202) 628-0858 facsimile

Attorneys for Plaintiff
United Technologies Corporation,
Pratt & Whitney Division

*Of Counsel:*

LESTER K. KATAHARA (D.C. BAR NO. 367691)
PRATT & WHITNEY MILITARY ENGINES
400 Main Street M/S182-30
East Hartford, CT 06108
(860) 565-5416
(860) 755-5878 facsimile

LEAH E. FRAZIER (D.C. BAR NO. 492540)
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005-5701
(202) 626-6086
(202) 628-0858 facsimile

Dated: July 24, 2006